**UNITED STATES of America**

v.

**Charles A. BOSSINGER,**

**Charles Bossinger, Appellant.**

**No. 93–7237.**

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 1993.

Decided Dec. 13, 1993.

Spero T. Lappas (argued), Harrisburg, PA, for appellant.

Wayne P. Samuelson, U.S. Atty., Theodore B. Smith, III (argued), Asst. U.S. Atty., Harrisburg, PA, for appellee.

Before: BECKER and STAPLETON, Circuit Judges, and RESTANI, Judge of the United States Court of International Trade *.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

The Sentencing Guidelines reduce the punishment for certain firearms offenses if the firearms were possessed solely for lawful sporting purposes. This appeal requires us to address the meaning of "lawful sporting purposes."

### I.

A search warrant was executed at Charles A. Bossinger's home and four firearms were seized. Bossinger pleaded guilty to violating 18 U.S.C. § 922(g)(1) which provides:

It shall be unlawful for any person—

(1) who has been convicted in any court of a crime punishable for a term exceeding one year

. . .

to ... possess ... any firearm....

Bossinger fell within the ambit of § 922(g)(1) because he previously had been convicted of an offense for which he could have been imprisoned for five years.

The Presentence Investigation Report recommended that Bossinger's base offense level be determined to be 14 pursuant to U.S.S.G. § 2K2.1(a)(6). Bossinger contended, however, that his base offense level should be reduced to 6 because he possessed the firearms solely for lawful sporting purposes and U.S.S.G. § 2K2.1(b)(2) provides:

If the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

Bossinger testified at the sentencing hearing that he used the four guns for nothing other than "plinking," which he defined as shooting at cans, bottles, and the like in trash dumps or as they were floating by in a river.

In response, the government urged the court to conclude that Bossinger did not possess the firearms solely for plinking and argued that, in any event, plinking was not a sport within the meaning of U.S.S.G. § 2K2.1(b)(2).

As we understand the judge's remarks prior to the imposition of sentence, he made no finding on the issue of whether Bossinger possessed the guns solely for plinking. Rather, he held that Bossinger was not entitled to a reduction in base offense level because, as a matter of law, guns possessed for plinking are not possessed for lawful sporting purposes. Sport with firearms, the judge concluded, connotes some form of competition, either between marksmen in target shooting competition or between men and beasts in hunting. Informal, noncompetitive recreation does not, in the district court's view, constitute sport under U.S.S.G. § 2K2.1(b)(2). Bossinger contends that the district court misinterpreted this Guideline section. We agree.

### II.

In common parlance, "sport" connotes recreation—something that is a source of pleasant diversion. See, e.g., 2 Oxford English Dictionary 2979 (compact ed. 1986) ("Pleasant pastime; entertainment or amusement; recreation; diversion"); Webster's Dictionary 2206 (3d ed. 1971) ("something that is a source of pleasant diversion; a pleasing or amusing pastime or activity; recreation"). A firearm possessed "solely for lawful sporting purposes" is, accordingly, understood to mean a firearm possessed solely for lawful recreational use. We find nothing

* Honorable Jane A. Restani, sitting by designation.

in the text or legislative history of U.S.S.G. § 2K2.1(b)(2) that would justify a more restricted reading.

In particular, we find no authority, legal or lexicographical, for the proposition that sport necessarily implies competition. While there are, of course, competitive sports, sporting activities, including those involving firearms, are commonly engaged in solely for the pleasure derived from the activity without competing against others. The example that comes most readily to mind in this context is the sport referred to by the district court as target shooting. Although there are those who shoot competitively at a ringed "bull's eye" target, many shoot at such a target for the pleasure of testing their skill at shooting accurately. We are unable to perceive any reason the Sentencing Commission might have distinguished for sentencing purposes between competitive target shooters and someone deriving pleasure from testing his or her ability to hit a "bull's eye" target or a target consisting of a can or bottle. We hold, therefore, that a firearm possessed solely for lawful sporting purposes includes a firearm possessed solely for plinking in a manner lawful in the location where the plinking is conducted.

As is apparent from this conclusion, we find unpersuasive the government's argument based on the 1989 amendment to U.S.S.G. § 2K2.1(b)(2). The government notes that the original 1987 version of that section stated that the base offense level would be reduced "if the defendant obtained or possessed the firearms solely for sport or recreation." An amendment effective November 1, 1989, replaced "sport or recreation" with "lawful sporting purposes." This change, says the government, shows that "sport" and "recreation" are distinct, and that firearms possessed for legal recreation no longer merit lighter sentences. Plinking, concludes the government, is recreation and guns possessed for plinking, even if used in a legal manner, do not qualify for a reduced base offense level.

We believe the government reads too much into the 1989 amendments. Distinguishing sport from recreation would be a challenge for any scholastic—as we have noted, lexicog-raphers define sport as recreation. We think it likely that the change from "sport or recreation" to "lawful sporting purposes" was intended to eliminate a redundancy rather than to constrict the scope of U.S.S.G. § 2K2.1(b)(2).

### III.

We hold only that plinking is sport. On remand, the district court will have to determine whether Bossinger has established by a preponderance of the evidence that he possessed the firearms solely for lawful plinking. The judgment of the district court will be reversed and this matter will be remanded to the district court for resentencing proceedings consistent with this opinion.