[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 5, 2005
THOMAS K. KAHN
CLERK

No. 05-12640
Non-Argument Calendar

_____

D. C. Docket No. 04-00209-CR-H-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD CALDWELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 5, 2005)

Before CARNES, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-appellant Donald Caldwell was convicted of possession of a

firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). On appeal,

Caldwell challenges the application of the sentencing guidelines to his offense. Specifically, he contends that he was entitled to a reduction under U.S.S.G. § 2K2.1(b)(2)[1] based on his brother's possession of the firearm for sporting purposes. According to Caldwell, his possession of his brother's sporting rifle - for the sole purpose of pawning the firearm in order to dispossess it - qualifies for the reduction. We disagree and therefore affirm.

The evidence at trial established that Caldwell was on supervised release following his conviction and imprisonment for a controlled substance offense. He was living in a house on 119 acres of land that belonged to the Caldwell family. Caldwell and his siblings all had access and rights to the house, but only Caldwell and his two brothers, Charles and Henry, were on the property with any regularity. Caldwell knew that the conditions of his release prohibited him from receiving, possessing, or transporting a firearm.

Charles Caldwell received a .22 caliber rifle, which was a type of gun commonly used for sporting, as collateral on a loan to a friend. Charles used the gun to shoot at cans.[2] Without Caldwell's or Henry's knowledge, Charles stored

---

[1]  Under U.S.S.G. § 2K2.1(b)(2), "[i]f the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined . . . to level 6."

[2] At least one court has held that "plinking" (shooting at cans) qualifies as sporting purposes under § 2K2.1(b)(2). United States v. Bossinger, 12 F.3d 28, 29 (3d Cir. 1993).

2

the firearm in the family home hidden behind the kitchen cabinets.

While cleaning the kitchen one day, Caldwell found the firearm. Because he knew he could not possess the firearm, he called Charles and requested he retrieve the gun. Charles, however, was out of town for work and was unable to remove the gun. When Caldwell realized Charles was unavailable, Caldwell took the gun to the pawn shop and pawned it for $20. He claims he did this to get rid of the gun and because he thought he was complying with the law. Caldwell, however, did not call his probation officer or Henry to remove the firearm, nor did he tell Charles that he pawned the gun, nor give Charles the pawn slip or the money he received. Caldwell never returned to the pawn shop to pick up the gun.

During an interview related to a separate incident, Caldwell informed his probation officer that he had pawned a rifle. The officer contacted the ATF, who retrieved the gun, and Caldwell was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

Caldwell's theory of defense was that, by pawning the gun to dispossess it, he lacked the requisite intent to possess a firearm under § 922(g). The court instructed the jury that it should find Caldwell guilty if it determined that he had knowingly possessed the firearm, and it defined "knowingly" as voluntarily and intentionally. Caldwell requested that the jury be instructed that

3

> [i]t is the theory of the defense that Donald Caldwell's actions of taking the rifle from his home to the pawn shop and pawning the rifle was done to dispossess the firearm from himself. Because he was not permitted to possess a firearm, once he discovered the firearm at his home in an area where he had access to it, he would be in violation of the law under 18 U.S.C. § 922(g)(1). You may find that he was justified in taking the actions that he took in order to separate himself from the firearm and avoid being in possession of it. If you find that he was justified in taking such action, you may return a verdict of not guilty, despite the fact that he necessarily had to possess the firearm in order to detach himself from it.

The court refused to give the instruction, concluding that it was not an accurate statement of the law. Caldwell was convicted.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6) with no enhancements or reductions. Caldwell's criminal history category III resulted in a guidelines range of 21 to 27 months imprisonment.

Caldwell raised three objections to the PSI: (1) he should receive a reduction for acceptance of responsibility because he went to trial only to raise a legal defense; (2) his base offense level should have been 6 under U.S.S.G. § 2K2.1(b)(2) because his brother possessed the firearm for sporting purposes only; and (3) he was entitled to a downward departure under U.S.S.G. §§ 5K2.0 or 5K2.16.

At sentencing, the court sustained the first objection and included a

reduction for acceptance of responsibility because Caldwell consistently had admitted his conduct. Caldwell restated his argument that he was entitled to a base offense level of 6 under § 2K2.1(b)(2) because Charles possessed the firearm for the sole purpose of sporting. He claimed that this guideline reduction should be read liberally to extend to his possession of his brother's sporting firearm because to read § 2K2.1(b)(2) narrowly would lead to absurd results. Caldwell urged the court to consider the circumstances of his possession - that he did not know his brother left the gun in the house, that he admitted his conduct, and that he had no similar prior convictions. The court found that the reduction did not apply to Caldwell's conduct even if Charles possessed the firearm for the sole purpose of sporting. Noting that there was no binding case law on point, the court cited an unpublished Eighth Circuit[3] case dealing with similar facts that held that the reduction was not warranted. As the court explained, Caldwell's possession of the gun to pawn it did not qualify as a sporting purpose. Nevertheless, the court granted a downward departure to reach what it concluded was a reasonable sentence. Accordingly, the court reduced the offense level to 10, which, with the criminal history category III, resulted in a guidelines range of 10 to 16 months. The court imposed a sentence of 12 months and 1 day, which it determined was

---

[3] United States v. Keever, 2003 WL 1192591 (8th Cir. Mar. 17, 2003) (unpublished).

5

reasonable and sufficient to meet the sentencing factors of 18 U.S.C. § 3553(a) because the case needed a strong level of deterrence.  Caldwell now appeals challenging the guidelines calculations.[4]

Caldwell argues that the court should have applied the base offense level under § 2K2.1(b)(2) because his brother owned the firearm for the sole purpose of sporting.  He asserts that the plain language of the guideline does not limit its application to those cases in which the possession is related to the defendant's own sporting purposes, and he notes that the commentary does not explain whose sporting purpose is relevant.

We review a district court's factual findings for clear error and the application of the guidelines de novo.  United States v. Lee, No. 04-12485, slip op. at 161 (11th Cir. Oct. 5, 2005).  After United States v. Booker, 543 U.S. –, 125

---

[4] Caldwell also challenges the sufficiency of the evidence and the jury instruction that excluded his theory of the defense. After a thorough review of the record, we conclude that these arguments are without merit.  Caldwell admitted possessing the firearm and his necessity defense does not negate his intent under § 922(g).  Therefore, his sufficiency of the evidence argument fails. United States v. Delevaux, 205 F.3d 1292, 1297 (11th Cir. 2000).  Moreover, a necessity defense is applicable in § 922(g) prosecutions only under extraordinary circumstances and requires the defendant to show "(1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm."  Id.; see also United States v. Dicks, 338 F.3d 1256, 1258 (11th Cir. 2005).  Here, the facts of the case do not support a justification defense.  United States v. Rice, 214 F.3d 1295 (11th Cir. 2000) (holding that defense was not applicable when defendant was not subject to immediate threat of physical injury).  Therefore, we affirm these issues without further discussion.

6

S.Ct. 738, 160 L.Ed.2d 621 (2005),[5] the district court is still required to correctly calculate the guidelines range, and the same standards of review apply. See Lee, slip op. at 161; see also United States v. Crawford, 407 F.3d 1174 (11th Cir. 2005).

Under U.S.S.G. § 2K2.1, the base offense level for possession of a firearm by a convicted felon is 14. U.S.S.G. § 2K2.1(a)(6). The guidelines provide, however, "[i]f the defendant . . . , possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6." U.S.S.G. § 2K2.1(b)(2). As the commentary explains,

> 'lawful sporting purposes or collection' as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1, comment. (n.7); see also United States v. Godfrey, 22 F.3d 1048, 1055-56 (11th Cir. 1994) (listing the surrounding circumstances under consideration). Caldwell has the burden of proving he is entitled to the reduction.

---

[5] Because the district court sentenced Caldwell under an advisory guidelines scheme and without any extra-verdict enhancements, there is no Booker error.

United States v. Wycoff, 918 F.2d 925 (11th Cir. 1990).

This court has not addressed the application of § 2K2.1(b)(2) under circumstances such as Caldwell's. See, e.g., United States v. Bristow, 110 F.3d 754 (11th Cir. 1997) (holding that the district court lacked the authority to grant a downward departure when defendant's firearm possession involved taking his father's firearm and pawning it to pay off financial debts, but not addressing application of § 2K2.1(b)(2)); Wycoff, 918 F.2d at 925 (rejecting defendant's claim that he possessed the firearm for sporting purposes when the police found him with the gun in his hands, he refused to release the firearm upon request, and he stated that he had the gun for self-defense).

Caldwell relies on several cases from other circuits to support his position. In United States v. Mojica, 214 F.3d 1169 (10th Cir. 2000), the Tenth Circuit held that § 2K2.1(b)(2) was not limited to those situations in which the defendant's possession related to his own lawful sporting purposes. Id. at 1171. In that case, the defendant, who lived with his brother and his niece, took a shotgun his brother had borrowed for sporting back to its owner to remove it from his possession after his niece informed police that there was a gun in the house. Id. at 1170. The circuit court concluded that the commentary did not clarify whose sporting purpose was related to the possession, and instructed courts to consider the surrounding

8

circumstances.  Id. at 1772.  Considering the surrounding circumstances, the court concluded that the reduction applied.  Id. at 1172-73.

Similarly, in United States v. Moit, 100 F.3d 605, 605-06 (8th Cir. 1996), the Eighth Circuit applied the guideline when a defendant kept his father's gun collection at the defendant's house even though he was not the collector and the guns were not found in locations consistent with collection purposes.  As the Eighth Circuit explained, "it is also reasonable to interpret [§ 2K2.1(b)(2)]  as [applying to a defendant's] benign possession of a firearm used solely for another's sporting . . . purposes."  Id. (citing United States v. Ramirez-Rios, 270 F.3d 1185, 1187 (8th Cir. 2001) (rejecting reduction because defendant's wife owned the weapons for protection, but explaining that another person's sporting purpose could be imputed to a defendant)).[6]

In contrast, other circuits have not applied the guideline when the defendant possessed the firearm for purposes other than sporting uses.  Moreover, these circuits have rejected the application of § 2K2.1(b)(2) when the defendant possessed the firearm to pawn it.  In reaching this conclusion, these circuits have

---

[6] Here, in determining that the reduction was inapplicable, the district court relied on an unpublished opinion from the Eighth Circuit in which the court rejected the application of § 2K2.1(b)(2) when the defendant possessed the firearm for the sole purpose of pawning it, even though the gun's owner told the defendant that he used the firearm for sporting.  United States v. Keever, 57 Fed. Appx. 719 (8th Cir. 2003) (unpublished).  Notably, in Keever, the Eighth Circuit offered little discussion to explain how the case was distinguishable from Moit and Ramirez-Rios.

determined that the plain language of the guideline requires that the firearm be used <u>solely</u> for sporting purposes and not for any other purpose. <u>See</u> <u>United States v. Solomon</u>, 274 F.3d 825, 828-29 (4th Cir. 2001) (discussing the plain language of the guideline); <u>United States v. Clingan</u>, 254 F.3d 624, 626 (6th Cir. 2001) (noting that solely means singly or alone and concluding that guideline did not apply when defendant intended to sell firearms to raise money to move out of state and pay for mother's medications); <u>see also</u> <u>United States v. Williams</u>, 76 Fed. Appx. 54 (6th Cir. 2003) (unpublished) (rejecting application of the guideline when defendant possessed the firearm to pawn it for cash); <u>United States v. Fredman</u>, 61 Fed. Appx. 82 (4th Cir. 2003) (unpublished) (same); <u>United States v. Noble</u>, 264 F.3d 1142 (5th Cir. 2001) (unpublished) (same).

We are not persuaded by the reasoning given in <u>Mojica</u> and <u>Moit</u>. Instead, we follow the Fourth, Fifth, and Sixth Circuits and hold that the plain language of the guideline renders the reduction inapplicable under the circumstances present in Caldwell's case. Caldwell did not actually possess the firearm <u>solely</u> for sporting purposes. Moreover, the court made factual and credibility determinations that Caldwell's reason for pawning the gun was unconvincing given that Caldwell never gave the pawn ticket or the money to Charles, nor did he make other attempts to have the gun removed from the house. Based on the testimony, we

10

conclude that these factual findings were not clearly erroneous. Accordingly, under the plain language of the guideline, we hold that a defendant must possess the firearm <u>solely</u> for sporting purposes to qualify for a reduction under U.S.S.G. § 2K2.1(b)(2). By this holding, we do not address whether another person's possession for sporting purposes may be imputed on another. Rather, we conclude that pawning a firearm, whether or not the firearm was owned for sporting purposes, does not meet the plain language of the § 2K2.1(b)(2).[7]

Accordingly, we **AFFIRM** the district court.

---

[7] It is also noteworthy that, although the court did not apply this guideline reduction, it did grant a downward departure, and the court stated that it believed the sentence it imposed was reasonable in light of the circumstances and the § 3553(a) sentencing factors.