FILED
United States Court of Appeals
Tenth Circuit

July 28, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH MARK HANSON,

Defendant-Appellant.

No. 07-8067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 07-CR-16-1-J)**

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs) Denver, Colorado, for Defendant-Appellant.

Gregory A. Phillips, Assistant United States Attorney (John R. Green, Interim United States Attorney, with him on the briefs) Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **TACHA, McWILLIAMS** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Joseph Mark Hanson lived and worked in Campbell County, Wyoming, where he was a foreman on an oil and gas drilling rig. On April 14, 2006, he

purchased a Ruger, Model P85, 9mm handgun at Main Street Pawn in Gillette, Wyoming. He paid $250 for the gun, a holster, and an extra clip.

At the time that he purchased the gun, Mr. Hanson was on probation from a state conviction for possession of marijuana and methamphetamine. On December 13, 2006, Mr. Hanson tested positive for methamphetamine after providing a urine sample to his state probation officer. At the request of the probation officer, local law enforcement inspected Mr. Hanson's vehicle, where an officer noticed an empty 9mm casing near the driver's seat. Mr. Hanson admitted that he owned a 9mm firearm which was in the trailer where he lived. He told officers that he kept the handgun in a cubbyhole in the front of his trailer inside a hard blue case—the officers found the gun where Mr. Hanson instructed them it would be. Mr. Hanson was prohibited by the state probation order from possessing firearms.

On January 18, 2007, Mr. Hanson was indicted on one count of being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2). Mr. Hanson pleaded guilty but filed a motion prior to his sentencing hearing, seeking reduction of his total offense level under the "sporting exception," U.S.S.G. § 2K2.1(b)(2), claiming that he purchased the handgun only for "shooting cans and jackrabbits." Sent. Tr. 11. The district judge determined that Mr. Hanson's possession of the handgun did not qualify for the reduction and sentenced Mr. Hanson to 33 months' imprisonment based on an

advisory Guidelines range of 30 to 37 months.  Mr. Hanson appeals his sentence, arguing that his possession of the gun was purely for a sporting purpose and that the district court ought to have applied the sporting exception reduction.  We affirm the sentence imposed by the district court.

## Analysis

The defendant bears the burden of proof in showing, by a preponderance of the evidence, that he qualifies for the sporting exception provided by § 2K2.1(b)(2).  The sporting exception states:

> If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level **6**.

The commentary to this paragraph provides:

> Under subsection (b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6.  Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1, cmt. n.6.  Because the burden of proof is on the defendant, if the district court finds that the evidence does not preponderate or is in equipoise, the reduction shall not be applied.

*a. "Plinking" as a Sporting Purpose*

We reject the government's argument that the sporting exception could not apply to Mr. Hanson as a matter of law, because his admitted purpose does not fall within the scope of a "lawful sporting purpose[]" under § 2K2.1(b)(2). A "sporting" purpose is an intent to engage in sport, "something that is a source of pleasant diversion; a pleasing or amusing pastime or activity; recreation." *Webster's Third New International Dictionary* (1976). "Plinking"—casual recreational shooting, often at cans and other items found lying around[1]—is a form of target shooting, and many people engage in target shooting for amusement and recreation. That plinking is casual, rather than organized or competitive, does not disqualify it as "sporting." We and several other circuits have assumed that target shooting, organized or unorganized, is a sporting purpose under the Guidelines. *See United States v. Collins*, 313 F.3d 1251, 1257 (10th Cir. 2002); *United States v. Lewitzke*, 176 F.3d 1022, 1028 (7th Cir. 1999); *United States v. Bossinger*, 12 F.3d 28, 29 (3d Cir. 1993) (holding, specifically, that "plinking" is a sport); *see also United States v. Denis*, 297 F.3d 25, 32 (1st Cir. 2002). *But see Springfield, Inc. v. Buckles*, 292 F.3d 813, 819 (D.C. Cir.

---

[1] For various definitions of "plinking," *see Webster's Third New International Dictionary* (1976) ("to shoot at random targets"); *Oxford English Dictionary* (2006) ("to shoot a gun at a target"); *United States v. Bossinger*, 12 F.3d 28, 29 (3d Cir. 1993) ("shooting at cans, bottles, and the like in trash dumps or as they were floating by in a river"); *United States v. Caldwell*, 431 F.3d 795, 796 n.2 (11th Cir. 2005) ("shooting at cans").

2002) (holding that plinking is "primarily a pastime, not a sport" for purposes of 18 U.S.C. § 925(d)(3), which allows the importation of firearms that are "of a type . . . generally recognized as particularly suitable for or readily adaptable to sporting purposes").

### b. Evidence Regarding the Defendant's Purpose

We next review the district court's conclusion that there was insufficient evidence that recreational shooting was Mr. Hanson's sole purpose in possessing the gun. The judge considered each of the factors mentioned in the application note to the Guidelines as potentially relevant to determining the defendant's purpose in possessing the weapon: the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history, and the extent to which possession was restricted by local law. U.S.S.G. § 2K2.1, cmt. n.6.

Because the burden is on Mr. Hanson to show that the exception provided by § 2K2.1(b)(2) applies to his circumstances, evidence that is in equipoise is insufficient. *United States v. Sanders*, 449 F.3d 1087, 1090 (10th Cir. 2006). "Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof." *United States v. Dudley*, 62 F.3d 1275, 1276–77 (10th Cir. 1995). The district court's finding that Mr. Hanson failed to tip the balance in his favor is a factual determination and one that we review only for clear error. *United States v. Collins*, 511 F.3d 1276, 1279 (10th Cir. 2008).

Mr. Hanson presented evidence, in the form of his own testimony, that his sole purpose in owning the gun was for recreation. At the sentencing hearing, Mr. Hanson said that he bought the gun for "shooting cans and jackrabbits. Some guys at work also had pistols, and we would take them to work and shoot cans and a few odd jackrabbits and just things around out in the country, you know, just a sporting deal." Sent. Tr. 11. He stated that he had taken the gun out shooting about three times during the eight months that he owned it, and that he did not use the gun for self-defense or protection. He carried the gun only when he was going out shooting, and otherwise kept the gun in its plastic case in a "cubbyhole" in his trailer. He did not need a gun to prevent burglary of his trailer, he said, because he had "a hound dog that takes care of them things. . . ." Sent. Tr. 13.

There was no evidence that Mr. Hanson intended to conceal his ownership of the gun. He acquired it in a manner that would have been lawful but for the probation order, using his proper name and identification and filling out the requisite paperwork at the time of purchase. When asked whether he knew that his having a gun was a violation of the law, Mr. Hanson replied, "I wasn't really aware that I couldn't have a gun." Sent. Tr. 15. He fully cooperated with authorities when questioned about whether he owned a gun, and directed police to where it was located.

Moreover, his criminal record suggests that in the past he has not used weapons in connection with crime. Mr. Hanson was convicted of sixteen crimes in the past ten years, including possession of marijuana and methamphetamine, battery and domestic violence, destruction of property, and driving under the influence or without a license. But, the sentencing judge noted with surprise, "there is not a reference in one single offense to the presence of a firearm or the use of a firearm in connection with the commission of the offense, not one." Sent. Tr. 27.

The district court nevertheless concluded that Hanson had failed to carry his burden of showing that he owned the gun "solely" for lawful sporting purposes. The court noted that although there was "nothing that contradicts Mr. Hanson" because "[t]he only evidence I've heard is Mr. Hanson, . . . [t]he Court does look at the surrounding circumstances. . . ." Sent. Tr. 26.

The first of those surrounding circumstances is the type of gun Mr. Hanson selected for purchase. A 9 mm handgun is less accurate than other weapons, such as a .22, and therefore not the type of gun that a person would typically buy for target practice. The judge noted that a 9mm Ruger is a "very dangerous" semi-automatic weapon. Sent. Tr. 26. Mr. Hanson told the sentencing judge that the friends who he shot with had guns similar to his. "One of them had a .45 auto, and another one had a 9-millimeter just like mine." Sent. Tr. 11. Still, the type of gun here, which is most commonly used for self-protection, weighs against Mr.

-7-

Hanson's claim that he purchased it entirely for a sporting purpose. *See Lewitzke*, 176 F.3d at 1028 (finding that defendant's gun was not of the type normally used for target shooting and therefore weighed against granting the reduction).

Second the judge considered Mr. Hanson's addiction to methamphetamine and his participation in the illegal drug market as relevant to determining his purpose in owning a weapon, explaining: "there is no indication he possessed the weapon with the intent of using it against other persons . . . [but] his drug lifestyle certainly could have facilitated that [use, as well as] the paranoia that occasionally we see with methamphetamine users. It certainly was a suspicious step." Sent. Tr. 35. We interpret this statement to mean that, whatever his conscious intention, Mr. Hanson must have understood that his extensive involvement in drugs made the use of the weapon against other persons more likely. In light of his "drug lifestyle," the judge found it "suspicious" that Mr. Hanson would purchase such a weapon. This was especially so because he was a methamphetamine user. Methamphetamine users often experience symptoms resembling paranoia, a belief that others are out to get him, and therefore are particularly likely to feel the need for self-defense.

We agree with the defendant that it would be improper for a district judge to infer a nonsporting purpose from the bare fact of a defendant's criminal involvement. Every application of § 2K2.1(b)(2) involves a person involved in crime of some sort, and if that fact alone were sufficient to outweigh other

evidence, such as the defendant's testimony, no defendant could ever prove entitlement to the exception. But we do not think it is improper for the judge to consider the particular nature of the defendant's criminal activity as part of the surrounding circumstances. Where, as here, the defendant is deeply involved in a "drug lifestyle," including use of methamphetamine with its attendant paranoia effects, the court is entitled to view with "suspicion" the defendant's purchase of a 9 mm handgun.

The question comes down to credibility. The district judge heard Mr. Hanson's testimony and we did not. "The sentencing court has discretion to make credibility determinations for sentencing purposes and we decline to review the credibility of a witness' testimony on appeal." *United States v. Martin*, 163 F.3d 1212, 1217 (10th Cir. 1998) (internal citation omitted). Here, having heard Mr. Hanson's testimony that he intended to use the weapon solely for plinking, the district judge still found that his purchase of the weapon "certainly was a suspicious step." Sent. Tr. 35.

In sum, given the type of weapon, Mr. Hanson's criminal history and addiction to methamphetamines, and the district judge's credibility determination, it was not clear error to conclude that Mr. Hanson had failed to show by a preponderance of the evidence that he had not considered using the gun for non-sporting purposes.

## Conclusion

We **AFFIRM** the district court's refusal to apply the reduction under § 2K2.1(b)(2), and the imposed sentence of 33 months.