[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 18, 2008
THOMAS K. KAHN
CLERK

No. 08-10718
Non-Argument Calendar

_____

D. C. Docket No. 07-00001-CR-RLV-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

INGRID ARNETH,
JEDSON EDWARD LEIST,
a.k.a. Jedson Leist,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 18, 2008)**

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Appellant Ingrid Arneth appeals her convictions and sentences on seven counts of making false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts Seven through Thirteen). Appellant Jedson Edward Leist appeals his sentences imposed by the district court pursuant to his convictions for: possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a) (Counts One and Fourteen); possession of a firearm after being convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9), 924(a) (Count Two and Fifteen); submission of false documents, in violation of 18 U.S.C. § 1001(a)(3) (Count Three); commission of mail fraud, in violation of 18 U.S.C. § 1341 (Count Five); commission of wire fraud, in violation of 21 U.S.C. § 1343 (Count Six); and false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts Seven through Thirteen).

## I. Arneth's Convictions and Sentences

The charges against Arneth stemmed from her purchase of several firearms. An individual who purchases a firearm must complete an Alcohol, Tobacco, and Firearms ("ATF") Form 4473, and on this form the purchaser must indicate that they are the "actual buyer" of the firearm. The government charged that Arneth

2

falsely stated on such forms that she was the "actual buyer" in connection with the purchase of eight firearms, because she in fact purchased the firearms as an unlawful "straw man" buyer on behalf of her husband Leist. On appeal, Arneth raises several issues with regard to her convictions and sentences, and we address each one in turn.

First, Arneth argues that the "actual buyer" language on ATF Form 4473 is unconstitutionally vague because it does not allow for joint ownership of firearms. Therefore, a person of ordinary intelligence would not be put on notice as to the illegality of her actions when buying a firearm to be kept in the marital home in a joint-ownership situation.

Because Arneth failed to raise this constitutional claim in this district court, we review for plain error only. *United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006). Under this standard, there must be (1) error, (2) that is plain, (3) and that affects the defendant's substantial rights. *Id.* (citation omitted). "If these three criteria are met, we may reverse for plain error if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993)). However, "[a]n error cannot be plain if such error is not obvious or clear under current law." *United States v. Hernandez-Gonzalez*, 318 F.3d 1299,

3

1302 (11th Cir. 2003); *see United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) ("[W]here neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.").

Here, Arneth cites no controlling law from either the Supreme Court or this court providing that the "actual buyer" language on ATF Form 4473 is unconstitutionally vague. As a result, any error would not be "plain" for purposes of plain error review. *See Hernandez-Gonzalez*, 318 F.3d at 1302. Accordingly, Arneth's argument does not merit relief.

Second, Arneth argues that the government improperly joined her in the indictment with Leist and a third codefendant, Carey Higgins, under Federal Rule of Criminal Procedure 8(b). Arneth contends that she was charged only with making false statements on ATF forms, whereas the remaining counts against Leist and Higgins were based on their fraudulent actions in securing Leist's certification as a police officer. Because her only connection to her codefendants is her status as Leist's spouse, Arneth argues that this is an insufficient basis to join them all in the same indictment. Moreover, Arneth contends that she suffered prejudice as a result of the misjoinder.

A claim of misjoinder of defendants under Rule 8(b) presents a question of law subject to plenary review. *United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001). Rule 8(b) provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). "[I]n order to establish that the [codefendants] have engaged in the 'same series of acts or transactions' under Rule 8(b) the government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." *United States v. Morales*, 868 F.2d 1562, 1569 (11th Cir. 1989). We construe Rule 8(b) broadly in favor of the initial joinder of defendants. *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990) (citation omitted). Moreover, "[i]f improper joinder under Rule 8(b) occurred, reversal is not required if the misjoinder was harmless error." *Id.* at 1477. Accordingly, "[a] defendant must show actual prejudice through a substantial and injurious effect on the jury's verdict before [she] can obtain a new trial." *Liss*, 265 F.3d at 1227.

Here, the record demonstrates that Arneth was not improperly joined in the same indictment with her codefendants. The firearms in Counts Seven through

5

Eight and Ten through Thirteen, on which both Arneth and Leist were charged, formed the basis, in part, for the possession charges against Leist in Counts One and Two. Accordingly, "the acts alleged were united by some substantial identity of facts and . . . participants." *Morales*, 868 F.2d at 1569.

Third, Arneth argues that the district court should have granted her motion to sever her trial based on her need for Leist's exculpatory testimony. Leist would have explained that Arneth purchased the guns for herself, but that he had access to them as with all of their marital property, and he would have testified that Arneth was unaware that he was a convicted felon and prohibited from buying firearms.

We review the denial of a motion to sever for abuse of discretion.[1] *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2962 (2008). "[I]n order to show an abuse of discretion, a defendant must satisfy the heavy burden of demonstrating compelling prejudice from the denial of a motion to sever." *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) (quotations omitted). To establish the need for severance based on the defendant's

---

[1] A motion to sever is governed by Federal Rule of Criminal Procedure 14(a), which provides: "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a).

6

desire to offer the exculpatory testimony of a codefendant, the defendant must first demonstrate: "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." *United States v. Cobb*, 185 F.3d 1193, 1197 (11th Cir. 1999) (citations and quotations omitted).  Our cases examining severance motions based on the need for a codefendant's exculpatory testimony "have often looked hard at the substance of the affidavits proffered by the co-defendant who purportedly would testify in a separate trial." *Novaton*, 271 F.3d at 989.  Moreover, "statements concerning the testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance." *Id.* at 990.

Arneth has not shown that the district court abused its discretion in denying her motion to sever based on the need for Leist's exculpatory testimony.  Arneth provides no basis to support her assertions as to the substance of Leist's potential testimony, nor does she cite to anything in the record indicating that Leist would even testify at a separate trial.  As a result, we conclude that Arneth has not met her heavy burden of demonstrating compelling prejudice resulting from the denial of her motion to sever.

Fourth, Arneth argues that the district court erred in denying her motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, because the evidence was insufficient to sustain her convictions. She contends that the inferences to be drawn from the evidence at trial were not inconsistent with every reasonable hypothesis of innocence, because there was testimony that one sales clerk thought that Arneth was purchasing guns for herself, that Arneth would shoot firearms at the firing range, that one of the weapons was an actual gift to her husband, that Arneth kept the firearms in her home, and that she frequently sold or traded the firearms herself.

We review the sufficiency of the evidence *de novo*.[2] *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir.), *cert. denied*, 127 S. Ct. 615 (2006). "[W]e must view the evidence in the light most favorable to the Government and decide whether a reasonable juror could have reached a conclusion of guilt beyond a reasonable doubt." *Id*. "The jury is free to choose among alternative reasonable interpretations of the evidence . . . and the government's proof need not exclude every reasonable hypothesis of innocence." *United States v. Tampas*, 493 F.3d

---

[2] Federal Rule of Criminal Procedure 29(a) provides: [a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a).

1291, 1298 (11th Cir. 2007) (internal citation and quotations omitted). "The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2155 (2007).

Section 924(a)(1)(A) prohibits "knowingly mak[ing] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." 18 U.S.C. § 924(a)(1)(A). A false representation on an ATF Form 4473 as to the identity of the actual buyer of a firearm constitutes a violation of § 924(a)(1)(A). *United States v. Nelson*, 221 F.3d 1206, 1209-10 (11th Cir. 2000). Accordingly, an unlawful "straw purchase" occurs where an ineligible buyer uses a lawful "straw man" buyer to obtain a firearm, and where the "straw man" buyer falsely represents on an ATF Form 4473 that she is the actual buyer of the firearm. *See id.* at 1209-10; *see also* 18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

We conclude from the record that the evidence was sufficient to sustain Arneth's convictions for unlawful "straw purchases" of firearms under § 924(a)(1)(A), as a reasonable juror could have concluded beyond a reasonable

doubt that she falsely stated on ATF forms that she was the "actual buyer" of the firearms at issue.

Lastly, Arneth argues that the court erred in calculating her guidelines range. The court counted 29 guns as relevant conduct, but Arneth only signed 22 ATF forms. Moreover, the court failed to reduce her offense level to level six under U.S.S.G. § 2K2.1(b)(2), Arneth argues, because the government failed to show that she purchased the firearms for anything other than lawful purposes.

"We review the district court's factual findings for clear error and the court's application of the sentencing guidelines to the facts *de novo*." *United States v. McGuinness*, 451 F.3d 1302, 1304 (11th Cir. 2006). The government must establish the evidence necessary to support a sentencing enhancement by a preponderance of the evidence, whereas the defendant has the burden of proving the applicability of a provision that would reduce her offense level. *See United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir.), *cert. denied*, 127 S. Ct. 2964 (2007).

Section 2K2.1 of the guidelines applies to violations of 18 U.S.C. § 924(a), and it provides for a 4-level increase if the number of firearms involved was between 8 and 24, and a 6-level increase if the number of firearms was between 25 and 99. U.S.S.G. §§ 2K2.1(b)(1)(B) and (C). For purposes of determining the

number of firearms involved as a specific offense characteristic under § 2K2.1(b)(1), relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense[s] of conviction." *See* U.S.S.G. 1B1.3(a)(1)(A). In addition, § 2K2.1(b)(2) instructs that "[i]f the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6." U.S.S.G. § 2K2.1(b)(2). However, "a defendant must possess the firearm solely for sporting purposes to qualify for a reduction under U.S.S.G. § 2K2.1(b)(2)." *United States v. Caldwell*, 431 F.3d 795, 800 (11th Cir. 2005).

We conclude from the record that Arneth has not shown that the court committed clear error by including at least 25 firearms as relevant conduct occurring during the commission of the unlawful straw purchases for purposes of § 2K2.1(b)(1)(C). Moreover, Arneth has not demonstrated that a base offense level of six should have applied under § 2K2.1(b)(2). As a result, we affirm Arneth's convictions and sentences.

## II. Leist's Sentences

11

Leist's aforementioned convictions were based on the following facts.[3] Leist, a convicted felon, applied for a position with the Rockmart, Georgia, Police Department, and during this process he affirmed that he had no prior felony convictions. Leist brought his teenage nephew to the police station, and he and another officer performed a mock-booking of the nephew to demonstrate what would occur if the nephew was arrested. The nephew's fingerprints were taken on the type of fingerprint card that was used for applicants, and this card was then submitted to the Rockmart Police Department and to the Federal Bureau of Investigation ("FBI") for purposes of a background check on Leist. The FBI concluded that the fingerprints did not match those of anyone arrested or convicted of any crimes, the FBI faxed this information to the Rockmart Police Department, and Leist was ultimately hired as a police officer. Several months later, Leist applied for a position with the Haralson County Sheriff's Department, and a background investigation revealed that he had been convicted of a felony and a domestic violence misdemeanor in Colorado. Leist was thereafter arrested in possession of several firearms. In calculating Leist's guidelines range, the district court applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6),

---

[3] Leist was also convicted on the seven counts of making false statements to a federally licensed firearms dealer.

12

based on the finding that Leist possessed firearms as a police officer in connection with his fraudulent acts in the application process, because it was an "ongoing fraud."

On appeal, Leist argues that the district court erred in enhancing his offense level under § 2K2.1(b)(6), because his possession of firearms as a police officer did not facilitate the commission of another felony offense. The fraudulent acts in Counts Three, Five, and Six all occurred before Leist became a police officer and possessed firearms in connection with his job, and his fraud was only continuing in the sense that his prior felony convictions were not discovered. However, he took no further actions to perpetuate his fraudulent conduct in the application process. Moreover, he contends that the court's reasons in support of the enhancement were flawed, because Leist was not pretending to be a police officer. Rather, he was actually hired as a police officer, and his possession of firearms in that capacity did not facilitate the covering up of his prior convictions.

Section 2K2.1(b)(6) of the guidelines provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6). According to the guidelines commentary, the four-level enhancement in § 2K2.1(b)(6) applies "if the firearm . . . facilitated, or had the potential of facilitating, another felony

offense." *Id.*, cmt. (n.14(A)). "Another felony offense" is defined as "any Federal . . . offense, other than the . . . firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year." *Id.*, cmt. (n.14(C)).

The undisputed facts in this case established that Leist possessed a firearm in connection with his scheme to defraud the City of Rockmart. For approximately one year Leist carried a firearm while posing as a Rockmart City police officer. Leist attempts to escape culpability by arguing that he was "required" to use a firearm in connection with the scheme to defraud. Leist fraudulently obtained a position as a Rockmart police officer and the use of a gun and the donning of the police uniform both perpetrated his scheme. If Leist had refused to wear a gun or uniform, it is highly unlikely that he could have effectuated his fraud. Thus, we conclude that the district court did not clearly err in finding that an enhancement for use of a firearm in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6), was warranted.

Moreover, because we conclude that Leist's total sentence of 240 months' imprisonment was both procedurally and substantively reasonable, we affirm his sentences.

For the above-stated reasons, we affirm Arneth's convictions and sentences and Leist's sentences.

**AFFIRMED.**