[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 22, 2007
THOMAS K. KAHN
CLERK

No. 06-12757

_____

D. C. Docket No. 05-00017-CR-002

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN PEREZ-OLIVEROS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(February 22, 2007)**

Before CARNES, PRYOR and FARRIS,[*] Circuit Judges.

FARRIS, Circuit Judge:

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Following a jury trial, Juan Perez-Oliveros was convicted of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  Perez appeals his conviction and 360-month prison sentence on the basis of alleged errors by the district court.  We affirm.

## BACKGROUND

Shortly after midnight on January 10, 2005, Alabama State Trooper Charles Anderson pulled over a Chevrolet Avalanche for erratic driving.  Perez, the driver, told Anderson that he and his passenger, Juvenal Espinoza, had been driving for twelve hours and that Perez was tired.  Anderson questioned Perez and eventually issued him a warning ticket.

Anderson detected some inconsistencies in Perez's story, and his suspicions were raised further when Perez's anxiety did not subside even after Anderson issued the warning.  Anderson asked permission to search the vehicle, and Perez consented.  Upon noticing that the anchor bolts in the bed of the truck had recently been tooled, Anderson and another trooper removed the bed liner, the truck's built-in toolbox, and rectangular panels that they discovered under adhesive mats affixed to the sides of the truck bed.  Hidden in compartments beneath these panels were several packages later determined to hold 30.22 kilograms, or 66.48

pounds, of 91% pure "ice" methamphetamine.

Perez was indicted on drug-trafficking charges on January 27, 2005 and proceeded to trial on January 23, 2006. Government testimony recounted the traffic stop, the discovery of the drugs, and Perez's arrest. An agent of Immigration and Customs Enforcement testified that the truck Perez was driving had crossed the border from Mexico into the United States at Laredo, Texas approximately fourteen hours before Perez was pulled over. The agent also testified that driving from Laredo to Mobile, where Perez was pulled over, would take about twelve and a half hours.

As he had explained to the arresting officers, Perez claimed at trial that a man named Jose Garcia had approached him in a pool hall in Atlanta and offered to pay him to drive Garcia's sick uncle, Espinoza, and his truck from San Antonio to Atlanta. Perez denied knowing that drugs were concealed in the vehicle and testified that he would not have driven the truck had he known. He stated that he would have been willing to continue the delivery to assist in apprehending the true culprits but that the arresting officers never asked.

The government introduced evidence tending to contradict Perez's story, including travel documents whose dates did not reconcile with Perez's version of events and a business card Perez had provided with what was purported to be, but

3

was not, Garcia's phone number. Also contrary to Perez's testimony, two government agents testified in response to cross-examination by Perez's counsel that they had given Perez an opportunity to complete the delivery, but Perez refused.

Perez attempted several times to introduce his wallet and its many contents as evidence to explain why he gave officers the wrong business card for Garcia. The district court sustained objections to the wallet's admission each time under Fed. R. Evid. 403, based on the irrelevance and prejudicial effect of family pictures and religious items included in the wallet's contents. The wallet was eventually admitted without the offending contents.

The jury convicted Perez of both charges. The court denied Perez's subsequent motion for a new trial based on alleged discovery violations by the prosecution.

Perez's presentence investigation report set his base offense level at 38 pursuant to U.S.S.G. § 2D1.1(c)(1). Two-level enhancements were applied under § 3C1.1 for obstruction of justice and under § 2D1.1(b)(4) because the offense involved the importation of methamphetamine. The resulting advisory guideline range for his offense was 360 months to life imprisonment.

At sentencing, Perez objected to the § 2D1.1(b)(4) enhancement on the

grounds that the evidence showed only that he picked up the truck in San Antonio, and not that he drove the drugs across the border. He also requested a downward adjustment for what he argued was his minimal role in the offense.

The court rejected both arguments. It found the proximity of the truck's border crossing and Perez's arrest sufficient to indicate importation of the drugs. The court, finding no comparators for Perez's offense, declined to apply a downward adjustment and sentenced Perez to two concurrent 360 month terms of imprisonment. Perez timely appealed.

## DISCUSSION

### I. Trial Issues

#### A. *Rule 16 and Perez's Motion for a New Trial*

Perez appeals the district court's denial of his motion for a new trial based on alleged discovery violations by the government. Perez contends that the government was obligated to disclose to Perez his statements refusing to continue the drug delivery and that the failure to do so constituted a violation of Rule 16 of the Federal Rules of Criminal Procedure. Because the statements tended to refute Perez's trial defense that he was an unwitting participant in the drug-transport scheme, Perez argues that their nondisclosure and use at trial prejudiced his substantial rights, warranting a new trial under *United States v. Noe*, 821 F.2d 604

(11th Cir. 1987).

We review the denial of a motion for a new trial for abuse of discretion.  *See United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006).

The record supports the district court's holding that Rule 16 did not apply. The district court did not abuse its discretion in denying Perez's motion for a new trial.  Rule 16 requires the government to disclose, upon a defendant's request, "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  FED. R. CRIM P. 16(a)(1)(A).  The district court determined that Rule 16 was never triggered as to the statements in question because the government did not intend to use them at trial.  The trial proceedings unequivocally support this finding: the government neither identified nor alluded to the evidence in its opening statements, nor did it ask the agents on direct whether they had asked Perez to continue with the delivery.  The statements were introduced only as a result of cross-examination of the government agents by Perez's counsel.  Rule 16 was not violated, and *Noe* does not apply.

**B.    *Exclusion of Perez's Wallet***

Perez also challenges the district court's refusal to admit his wallet in its

6

entirety, arguing that this alleged error precluded him from demonstrating that his providing a wrong phone number for Garcia to police officers may have been a result of his wallet having been tattered and overflowing with documents and other items.

We review a district court's evidentiary rulings for clear abuse of discretion, *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006), and find none here. Perez's wallet is outside the purview of the Rule 106 doctrine of completeness. FED. R. EVID. 106. Further, Perez was permitted to make his point: the court selectively excluded only the wallet's religious items and family pictures while allowing Perez to admit the wallet and its other contents and to pursue a relevant line of questioning.

### C.       *Improper Vouching by the Prosecution*

Perez fails to demonstrate improper vouching. In none of the instances he identifies did the government place its prestige behind a witness by making explicit assurances of the witness's veracity or by implying that evidence not presented to the jury supports the witness's testimony. *See United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996).

## II.     Sentencing Issues

### A.       *Minor Role Adjustment*

We review a district court's determination whether a defendant qualifies for adjustments under the sentencing guidelines for clear error. *See United States v. Boyd*, 291 F.3d 1274, 1277 (11th Cir. 2002). It is Perez's burden as defendant to prove his minor role in the offense by a preponderance of the evidence. *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999).

The district court's rejection of a minor role adjustment was supported by the record. Perez has not shown that he played a relatively minor role in the conduct for which he has been held accountable. *See id.* at 940-45. He has also failed to identify discernable additional participants in the relevant conduct against whom the district court might have measured his relative role. *See id.* at 944-45.

## B. *Importation Enhancement*

Perez also appeals his sentencing enhancement under U.S.S.G. § 2D1.1(b)(4). We review de novo the district court's interpretation and application of the Sentencing Guidelines. *See United States v. Owens*, 447 F.3d 1345, 1346 (11th Cir. 2006). Underlying factual findings are reviewed for clear error. *Id.* The burden of establishing evidence of the facts necessary to support a sentencing enhancement falls on the government, and it must do so by a preponderance of the evidence. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999). "It is the district court's duty to ensure that the Government

8

carries this burden by establishing a sufficient and reliable basis for its request for an enhancement." *Id.*

Section 2D1.1(b)(4) calls for a two-level increase in a defendant's offense level if "(A) the offense involved the importation of . . . methamphetamine . . ., and (B) the defendant is not subject to an adjustment under § 3B1.2" for a minor or mitigating role. The district court properly concluded that Perez was not subject to a § 3B1.2 minor role adjustment. The question then is whether Perez's offense "involved the importation of . . . methamphetamine" within the meaning of § 2D1.1(b)(4)(A).

The record demonstrated that the truck Perez drove crossed the border fourteen hours prior to Perez's arrest and that the drive from Laredo to Mobile, where Perez was arrested, requires approximately twelve and a half hours. A trier of fact could properly conclude that the time required to secrete the drugs as they were, coupled with driving time, provided sufficient basis to conclude that the methamphetamine was necessarily imported since it had to have been in the truck before it crossed the border. The finding of importation is not clearly erroneous.

Perez maintains that even if the drugs were imported, the standard of § 2D1.1(b)(4) is not satisfied since no evidence connects his offenses with the importation. He insists that the government presented no evidence demonstrating

9

his participation in the drugs' border crossing or in arranging for their entry. In addition, Perez points out, the government conceded at sentencing that Perez did not meet the truck, and thus the drugs, until they reached San Antonio.

Perez reads § 2D1.1(b)(4) too narrowly. Under his interpretation, § 2D1.1(b)(4) would apply to only those defendants who themselves transport methamphetamine across the border. If the Sentencing Commission intended such a limited application, it would have used the language it used in a prior subsection, which applies a separate enhancement only "[i]f the defendant unlawfully imported or exported a controlled substance" under certain circumstances. U.S.S.G. § 2D1.1(b)(2). Faced with the Sentencing Commission's deliberate choice of the more inclusive language "involved the importation," we give the enhancement a broader reading than does Perez.

Perez's argument is also based on the assumption – foreclosed by our precedent – that the importation of the methamphetamine had ended by the time he began driving the drug-laden vehicle. We have previously held that the crime of importation does not end the moment the controlled substance enters the United States. *United States v. Martinez*, 763 F.2d 1297, 1304 (11th Cir. 1985). Rather, importation "is a continuous crime that is not complete until the controlled substance reaches its final destination point." *United States v. Corbin*, 734 F.2d

10

643, 652 (11th Cir. 1984) (quoting *United States v. Gray*, 626 F.2d 494, 498 (5th Cir. 1980) (internal quotation marks omitted)).

Perez's offenses involved the importation of methamphetamine as required by § 2D1.1(b)(4). San Antonio was not the final destination of the methamphetamine, meaning that the importation was ongoing when Perez began driving the drug-laden truck in San Antonio. He continued to transport the drugs hundreds of miles to Mobile, Alabama as part of the ongoing importation. His argument that he was unaware that the drugs were hidden in the truck is foreclosed, since the jury necessarily found in convicting him that he knew of their existence. *See* 21 U.S.C. § 841(a)(1) (making it unlawful to "knowingly or intentionally" possess with intent to distribute a controlled substance). We decline to define the exact contours of what it means for an offense to "involve[] the importation of . . . methamphetamine," but the requisite level of involvement is present here.

**AFFIRMED.**