[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16558
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00039-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ABRAHAM DAVID SAFTCHICK,
a.k.a. Dave,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 30, 2009)

Before TJOFLAT, EDMONDSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Abraham David Saftchick appeals his 97-month sentence, imposed following his guilty plea on one count of conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii) and 846. We find no error and affirm the sentence.

## BACKGROUND

In the factual basis for his guilty plea, Saftchick agreed that he participated in a conspiracy "to acquire distribution quantities of marijuana and provide the marijuana to others" between January 2005 and May 2007 with codefendants Christopher Hutchins and Howard Fisher. Saftchick also agreed that he and his codefendants delivered over 100 kilograms of marijuana to Justin Mikhael[1] in Destin, Florida, and that the marijuana "would then be stored at Mikhael's residence until Mikhael would, in turn, distribute the marijuana to others."

According to the presentence investigation report (the "PSI"), Mikhael operated a large drug-trafficking network, and Saftchick was a primary source of marijuana for Mikhael. Saftchick transported high-quality marijuana from Florida to New York, where it was ultimately sold. Mikhael received 10 to 20 pounds of marijuana from Saftchick and his codefendants on at least 20 occasions, and he

_____

[1] The parties spell this name differently. We use the spelling used in the presentence investigation report.

2

paid an average of $3,500 per pound. Saftchick's codefendants also delivered marijuana to Mikhael on multiple occasions. A review of telephone records by law enforcement revealed a "significant amount of telephone activity" between Saftchick, Mikhael, and Fisher. Additionally, a quantity of marijuana and numerous firearms were seized from Mikhael's residence on April 5, 2007, and Saftchick was observed visiting that residence after that date, on April 9, 2007. In January 2008, Saftchick, Hutchins, and Saftchick's mother were arrested in California after police found 21 pounds of marijuana in their motel room. In May 2008, officers found a handgun at Saftchick's residence, numerous firearms at Hutchins's residence, and records at Hutchins's residence reflecting that 348 pounds of marijuana were distributed to persons other than Mikhael during the course of the conspiracy. In the same month, law enforcement found numerous firearms at Mikhael's residence.

In calculating the sentencing guidelines range, the probation officer applied a base offense level of 26 because the offense involved between 100 and 400 kilograms of marijuana, U.S.S.G. § 2D1.1(c)(7). The officer applied a two-level enhancement because a dangerous weapon was possessed, U.S.S.G. § 2D1.1(b)(1), finding that Saftchick was accountable for firearms possessed by Mikhael during the conspiracy. The officer also applied a four-level enhancement because

3

Saftchick was an organizer or leader of criminal activity involving five or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b). With a total offense level of 29 and a criminal history category of II, the guidelines range was 97 to 121 months' imprisonment. The offense carried a statutory minimum of 5 years' imprisonment and a maximum of 40 years, 21 U.S.C. § 841(b)(1)(B).

Saftchick's appeal relates to two objections he made to the PSI. First, Saftchick objected to the four-level § 3B1.1(a) enhancement, arguing that although he held a leadership position in the conspiracy, he supervised less than five people in the conspiracy and therefore should receive only a two-level enhancement under § 3B1.1(c), rather than the four-level § 3B1.1(a) enhancement. Second, Saftchick objected to the two-level § 2D1.1(b)(1) enhancement, asserting that Mikhael was merely a buyer, not a co-conspirator, that Saftchick was unaware that Mikhael possessed firearms, and that Saftchick, therefore, should not be held responsible for the firearms Mikhael possessed.

At the sentencing hearing, the government presented Agent Michael Bettis in support of the § 3B1.1(a) enhancement, who testified that Saftchick regularly provided distribution quantities of marijuana to Mikhael, who then distributed the drugs to "numerous" other individuals. Also, Saftchick acted in concert with

4

Hutchins and Fisher, along with several "mules," or transporters of the drugs, including Maria Saftchick. The ledger found in Hutchins's home "clearly depict[ed] marijuana going out by group members . . . as well as monies going to sources of supply for payments of large marijuana loads." Moreover, the marijuana was regularly "fronted" to Mikhael in "an ongoing operation." The district court found that the enhancement applied because the criminal activity involved five or more participants, including Mikhael. The court also found that even if there were fewer than five participants, the enhancement applied because the conspiracy was "otherwise extensive," as it ran from January 2005 through May 2007, Saftchick transported marijuana between Florida and New York, the marijuana was of high quality, and a significant amount of money was involved.

The court also overruled Saftchick's objection to the § 2D1.1(b)(1) enhancement based on Mikhael's possession of firearms. Per agent Bettis's previous testimony during a codefendant's sentencing hearing,[2] firearms were found in Mikhael's home on April 5, 2007, and Mikhael stated that he needed them for protection after he was robbed during a drug transaction. The court found that the §2D1.1(b)(1) enhancement applied because Mikhael was a

---

[2] Saftchick and the government stipulated that the court could rely upon Agent Bettis's prior testimony.

5

co-conspirator, even though not charged as such, he possessed the firearms in furtherance of and in close temporal proximity to the conspiracy, and it was reasonably foreseeable that firearms would be possessed in light of the nature of the operation.

The court sentenced Saftchick to 97 months' imprisonment, and Saftchick timely appealed.

## STANDARD OF REVIEW

We review a district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir. 2007). "A district court's determination as to a defendant's role in the offense is a finding of fact subject to a clearly erroneous standard of review." United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993). The factual determination that a co-conspirator possessed firearms in furtherance of the conspiracy is also reviewed under the clearly erroneous standard. United States v. Nino, 967 F.2d 1508, 1514-15 (11th Cir. 1992).

## DISCUSSION

*Section 3B1.1(a) Enhancement for a Leadership Role*

Saftchick argues that the court erroneously applied the § 3B1.1(a) enhancement because, although he had a leadership role in the conspiracy, it did

not involve five or more participants and was not otherwise extensive. Thus, Saftchick claims he should only have received a two-level enhancement under § 3B1.1(c). Saftchick asserts that Mikhael was just a buyer and not a participant in the conspiracy. Saftchick, relying on Yates, 990 F.2d 1179, also asserts that the district court erred in finding that the operation was otherwise extensive. We disagree and affirm the enhancement of Saftchick's sentences under § 3B1.1(c).

The guidelines provide for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3E1.1(a). The application notes instruct that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id., comment. (n.1). "[I]n deciding whether individuals were participants in the criminal activity, the court must consider, in addition to the criminal act itself, the individuals' involvement in the events surrounding the criminal act." United States v. Holland, 22 F.3d 1040, 1046 (11th Cir. 1994).

The application notes further instruct that "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." U.S.S.G. § 3B1.1, comment. (n.3). "Although this circuit does not employ a precise definition for the 'otherwise

7

extensive' standard, there are a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved." Holland, 22 F.3d at 1046.

Here, the district court committed no error in finding that Saftchick held a leadership position in an organization involving five or more participants nor in finding that his organization was "otherwise extensive." Between January 2005 and May 2007, Saftchick and his codefendants regularly delivered over 100 kilograms of marijuana to Mikhael, who in turn operated a large drug-trafficking network. Officers discovered a "significant amount of telephone activity" between Saftchick, Fisher, and Mikhael. Moreover, the marijuana was regularly "fronted" to Mikhael, *i.e.*,Mikhael would pay Saftchick and his codefendants after receiving money from Mikhael's "numerous" buyers. The court did not err in interpreting this evidence to mean that Mikhael was a participant in Saftchick's organization. See United States v. Matthews, 168 F.3d 1234, 1249-50 (11th Cir. 1999) (holding that fronting drugs to another individual is sufficient to make that individual a part of the defendant's criminal organization and to warrant use of a similar leadership enhancement under § 3B1.1(b)). Additionally, Saftchick did not need to have control over every co-conspirator for § 3B1.1(a) to apply, so long as he held a leadership role and the organization involved five or more people. See id.

8

In addition, the district court properly found that the organization was "otherwise extensive." Saftchick transported high-quality marijuana from Florida to New York. Mikhael paid Saftchick and his codefendants approximately $3,500 per pound of marijuana. Several "mules" were employed as drug couriers, and a ledger found in Hutchins's home indicated that Saftchick and his codefendants distributed 348 pounds of marijuana to persons other than Mikhael. Further, Saftchick and his co-defendants were arrested with, collectively, over 60 pounds of marijuana in their possession. These facts demonstrate Saftchick's criminal activity was otherwise extensive. See United States v. Rodriguez, 981 F.2d 1199, 1200 (11th Cir.1993) (finding that the defendant was involved in "otherwise extensive" criminal activity when he "was organizing a drug transaction that extended from Columbia to Florida to Boston to New York, and which included the purchase and street distribution of 100 kilos of cocaine worth $350,000 in the wholesale market").

As a final matter, Yates is distinguishable. In Yates, this court reversed the district court's application of a § 3B1.1(a) enhancement to someone whom the government had not proved held a leadership role in the organization, but was instead simply a supplier to an extensive operation. 990 F.2d at 1181-82. The district court applied§ 3B1.1(a) based solely upon the extensive nature of the

distribution ring.  Id. at 1180-81.  This court vacated and remanded because the government had presented no evidence that the defendant "was an organizer or leader" and the evidence indicated at most "a continuing seller/buyer relationship" between the defendant and the head of the drug ring.  Id.  Here, on the other hand, Saftchick acknowledged that he occupied a leadership role in the conspiracy, the evidence clearly reflected more than a mere buyer/seller relationship existed with Mikhael, and Saftchick was not merely held accountable for selling drugs to the leader of an otherwise extensive trafficking operation.  Accordingly, we affirm the application of the § 3B1.1(a) enhancement.

*Section 2D1.1(b)(1) Enhancement for Possession of a Firearm*

Saftchick also argues that the district court erroneously applied the § 2D1.1(b)(1) enhancement based on Mikhael's possession of firearms, because Mikhael was not charged as a co-conspirator nor unavailable for indictment.  Moreover, Saftchick contends that Mikhael's possession of firearms was not reasonably foreseeable because they were hidden in his bedroom, and there was no connection between the firearms and Saftchick.  In addition, Saftchick argues that he never admitted the facts in support of this enhancement, and that the application of the enhancement therefore violated the Sixth Amendment under United States v. Booker, 543 U.S. 220 (2005).  Finally, Saftchick argues that

10

Mikhael's possession of firearms was not in furtherance of the conspiracy, as he was merely a buyer.

In the case of a drug-trafficking offense, the guidelines provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "[T]he [§ 2D1.1(b)(1)] enhancement is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction." United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997). For this enhancement to apply to a defendant based on a co-conspirator's possession of a firearm, the government must show that: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir. 1999). "Once the government shows that a firearm is present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Westry, 524 F.3d 1198, 1221 (11th Cir. 2008) (quotations omitted), *cert. denied*, Carter v. United States, 129 S.Ct. 251 (2008), and Hinton v. United States, 129 S.Ct. 902 (2009).

This court has indicated that the §2D1.1(b)(1) enhancement may apply to a defendant, based on a co-conspirator's possession of a firearm, only when the possessor is charged as a co-conspirator. See United States v. Otero, 890 F.2d 366, 367 (11th Cir. 1989). This court, however, later explained that Otero should not be read strictly and that the general import of Otero is to avoid sentence enhancements for firearms possession by persons outside a conspiracy. See United States v. Nino, 967 F.2d 1508, 1514-15 (11th Cir. 1992) (applying the enhancement even though the weapons were possessed by co-conspirators who are not charged because one died before the conspiracy ended and the other cooperated with the government in exchange for immunity). The Otero rationale "is satisfied if the possessor of the firearm is a co-conspirator of the defendant whose sentence is enhanced," so long as the co-conspirator's firearms possession is in furtherance of the conspiracy and reasonably foreseeable. United States v. Luiz, 102 F.3d 466, 469 (11th Cir. 1996); see U.S.S.G. § 1B1.3. Accordingly, Mikhael's firearms possession could be attributed to Saftchick as a co-conspirator, regardless of whether Mikhael was indicted in this case.

Thus, the district court did not err in enhancing Saftchick's offense level based on Mikhael's possession of firearms. As discussed earlier, the facts support the finding that Mikhael was a co-conspirator and not a mere buyer. Also,

12

Mikhael possessed numerous firearms at his residence – from where Saftchick and his codefendants regularly distributed large quantities of marijuana – and Mikhael stated that he purchased them for protection after being robbed in a drug deal. The fact that firearms were found at the home of a co-conspirator who stored and distributed drugs as a part of their conspiracy supports the finding that Mikhael possessed firearms in furtherance of the conspiracy and that Mikhael's doing so was reasonably foreseeable by Saftchick. See United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005) (holding that firearms were possessed in furtherance of a drug conspiracy and reasonably foreseeable when found at the location from which the defendant's co-conspirators distributed drugs); see also United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (recognizing that, in light of the "frequent and overpowering connection between the use of firearms and narcotics traffic," it is "reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs.").

Additionally, Saftchick was a member of the conspiracy when Mikhael possessed the firearms. The charged conspiracy ran from January 2005 until May 2007, the firearms were found in Mikhael's residence on April 5, 2007, Saftchick's codefendants engaged in narcotics-trafficking activities at Mikhael's residence through March 2007, and Saftchick was observed visiting Mikhael's

13

residence on April 9, 2007. Finally, Saftchick has not shown that a connection between the firearms and the conspiracy was clearly improbable, and the record does not support such a conclusion, in light of the location of the firearms and Mikhael's stated purpose for possessing them. See Fields, 408 F.3d at 1359. As a result, the district court did not err in applying the § 2D1.1(b)(1) enhancement.

As a final matter, Saftchick argues that the district court violated his Sixth Amendment rights, as explained in Booker, 543 U.S. 220, by imposing an enhancement for Mikhael's possession of the firearms even though the facts supporting that enhancement – that Mikhael possessed firearms – were neither found by a jury nor part of Saftchick's plea. Saftchick asserts that he was unaware that Mikhael possessed any weapons. "Booker holds that 'the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury.'" United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006) (quoting United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005)). "After Booker, district courts may still impose fact-based sentencing enhancements under an advisory guidelines system without violating the Sixth Amendment." Id. Here, nothing in the record suggests that the district court applied the guidelines in a mandatory fashion.

Accordingly, we affirm the offense level enhancement for possession of a firearm of a conspirator under § 2D1.1(b)(1).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Saftchick's sentence.