[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10959
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20739-DMM-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN PAUL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 8, 2014)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jean Paul appeals his conviction after a jury trial for conspiracy to possess with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 851.  In this direct appeal he argues that the district court erred by:  (1) denying his motion to suppress evidence from a traffic stop; (2) allowing two witnesses to testify that Paul had sold them crack cocaine previously; and (3) allowing a law enforcement officer to testify as an expert on the code and jargon used by drug traffickers.  For the reasons below, we affirm.

## I.

Paul first argues that the district court erred in denying his motion to suppress evidence from a traffic stop.  At the suppression hearing, Detective Gregory Edlund testified that he had been told of Paul's involvement with narcotics before the traffic stop.  He also testified that on May 8, 2012, he and two other officers were driving behind Paul's Suburban when it stopped in the middle of a roadway just after driving through an intersection.  Edlund stopped behind Paul, turned on his lights, and approached Paul's vehicle.

When Edlund approached, he noticed the SUV was running.  He also noticed that Paul had no seatbelt on, was soaking wet, and was only wearing boxer shorts.  According to Edlund, Paul was very irate.  Edlund also testified that Paul gave inconsistent statements in response to his questions.  Paul first told Edlund he had been at a community pool, but had trouble describing where the pool was.

2

Later in the conversation Paul changed his story and said he was coming from the beach, but could not say which beach. Paul did not have his driver license with him. Using his name and date of birth, Edlund confirmed Paul had a valid driver license and was on federal probation.[1]

At that point, Edlund decided to investigate further and asked Paul to get out of the Suburban. Edlund was traveling with a police dog. After handcuffing Paul, Edlund conducted a canine sniff of the outside of the vehicle and of Paul. The dog alerted to the hood of the SUV. Edlund opened the hood and found an ashtray with a magnet attached to the side of the engine compartment. The ashtray contained several small pieces of cocaine rock. Edlund searched further and found a second ashtray that did not match the interior of the vehicle.

Prior to trial Paul moved to suppress the evidence recovered in the May 8, 2012 traffic stop. The district court denied his motion. On appeal Paul argues that he did not commit a traffic violation that justified the stop. Paul also argues that Edlund did not have a reasonable suspicion that Paul was involved in criminal activity. Finally, he argues that there was not a sufficient basis to ask him to get out of the Suburban, to handcuff him, or to allow a canine sniff.

We review a district court's denial of a motion to suppress under a mixed standard, reviewing the court's findings of fact for clear error and the application

---

[1] Paul was on bond in connection with this case and subject to monitoring by the U.S. Probation office.

of law to those facts de novo.  United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007).  The district court's factual findings are construed in the light most favorable to the prevailing party.  Id. at 1236.

We first consider whether the traffic stop here was lawful.  "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."  Whren v. United States, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772 (1996).  A traffic stop is lawful if it is justified by probable cause to believe that a traffic violation occurred.  United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (officer had probable cause to stop vehicle he saw failing to signal during a lane change).

Against this legal backdrop, the relevant question here is whether Edlund had probable cause to believe Paul had committed a traffic violation.  We find no error in the district court's conclusion that he did.  Florida law prohibits the following conduct:

> It is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon . . . .

Fla. Stat. § 316.2045(1).  The district court credited Edlund's testimony that he observed Paul stopped in the middle of the roadway with his vehicle running.  The

4

traffic stop was therefore justified because Edlund had probable cause to believe that Paul was committing a traffic violation.

We also conclude that Edlund's decision to briefly detain Paul after the stop was based on reasonable suspicion. Under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), a police officer may briefly detain a person to investigate a reasonable suspicion that the individual is involved in criminal activity. United States v. Williams, 876 F.2d 1521, 1523 (11th Cir. 1989). We agree with the district court that this standard was met here. Edlund testified that after approaching Paul's vehicle he observed that Paul was soaking wet and wearing only his boxer shorts; he was unable to answer questions about where he had been and what he had been doing; he gave inconsistent answers; and he acted belligerently. He was also driving without his license and being monitored by federal probation. We find no clear error in any of these factual findings, nor any legal error in the district court's conclusion that Edlund therefore had a reasonable basis for further investigation. United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (affirming finding of reasonable suspicion to further investigate suspicious circumstances where defendant "was: (1) driving a rental car with a restricted license; (2) 'shaking' and acting 'extremely nervous;' and (3) gave conflicting responses as to where he had been").

We also affirm the district court's finding that there was no Fourth Amendment violation in Edlund's decision to order Paul from the Suburban or handcuff him.  During a lawful traffic stop, officers may take steps that are reasonably necessary to protect their personal safety, including requiring the driver and passengers to get out of a vehicle.  United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009).  They may also handcuff a suspect during a Terry stop where officers reasonably believe there is a threat to their safety.  United States v. Hastamorir, 881 F.2d 1551, 1557 (11th Cir. 1989).

In Paul's case he was acting belligerently towards Edlund in addition to seeming out of sorts given his dress and inability to account for where he had been.  Paul had stopped his SUV in the middle of the roadway, was not wearing a seatbelt, and did not have his license.  Edlund also knew Paul was potentially involved in narcotics and was being monitored by federal probation.  Therefore, under the circumstances of this case, it was not unreasonable for Edlund to ask Paul to get out of his vehicle or to handcuff Paul for the officers' safety while they investigated further.

Lastly, the canine sniff of Paul's Suburban and the resulting discovery of the ashtrays during the traffic stop did not violate the Fourth Amendment.  A prompt canine sniff conducted during a lawful traffic stop that reveals nothing but the location of illegal drugs does not violate the Fourth Amendment.  Illinois v.

6

<u>Caballes</u>, 543 U.S. 405, 410, 125 S. Ct. 834, 838 (2005); <u>see also</u> <u>United States v.</u>

<u>Hernandez</u>, 418 F.3d 1206, 1211 n.5 (11th Cir. 2005) (describing canine sniff as

"brief, minimally intrusive investigation technique").

For these reasons, we affirm the district court's denial of Paul's motion to

suppress.

II.

Paul next argues that the district court erred by allowing two witnesses—

Eileen Callahan and Keith Cestaric—to testify about buying narcotics from Paul.

We review a district court's evidentiary rulings for abuse of discretion. <u>United</u>

<u>States v. Perez-Oliveros</u>, 479 F.3d 779, 783 (11th Cir. 2007).

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not

admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character." Fed. R.

Evid. 404(b)(1). However, evidence is only subject to a Rule 404(b) analysis if it

is extrinsic to the crime charged. <u>United States v. Schlei</u>, 122 F.3d 944, 990 (11th

Cir. 1997). Evidence is not extrinsic "if it is (1) an uncharged offense which arose

out of the same transaction or series of transactions as the charged offense,

(2) necessary to complete the story of the crime, or (3) inextricably intertwined

with the evidence regarding the charged offense." <u>United States v. McLean</u>, 138

F.3d 1398, 1403 (11th Cir. 1998) (citation omitted).

7

Finally, even if evidence is admissible under Rule 404(b), it must still satisfy the requirements of Rule 403. United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007). Rule 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.

With this legal framework in mind, we conclude that Callahan and Cestaric's testimony was admissible. First, Rule 404(b) does not apply here because Callahan and Cestaric's testimony was not extrinsic to the crime charged. The superseding indictment charged Paul with conspiracy beginning around April 2010 and continuing through January 2011. Much of Callahan and Cestaric's testimony was therefore not extrinsic because it related to the period of the charged conspiracy. See United States v. Ramsdale, 61 F.3d 825, 830 (11th Cir. 1995) ("Evidence of possession of the drug which [the defendant] was accused of conspiring to manufacture, during the period of time alleged in the indictment, and under circumstances which suggested drug trafficking, is not extrinsic evidence within the meaning of 404(b)."). Although some of their testimony addressed purchases before and after the charged conspiracy, this evidence was also not extrinsic because it provided context regarding how Callahan and Cestaric became Paul's customers and demonstrated the continuing nature of the conspiracy. See United States v. Costa, 691 F.2d 1358, 1360–61 (11th Cir. 1982) (witness's testimony about how he came to know the defendant as a dealer in cocaine was

8

integral to showing why he expected defendant to provide him with a kilogram of cocaine).

Finally, the testimony was also highly probative of Paul's participation in the conspiracy as charged in the indictment and therefore was not subject to exclusion under Rule 403. For these reasons, the district court did not abuse its discretion in allowing Callahan and Cestaric to testify.

### III.

Finally, Paul argues that the district court erred by admitting expert testimony from Agent Gregory Cipriano. At trial Cipriano provided his opinion as to the meaning of various words related to the sale and distribution of cocaine and crack cocaine used by Paul to communicate with customers and another member of the conspiracy.

We review a district court's decision to admit expert testimony under Rule 702 for abuse of discretion. United States v. Garcia, 447 F.3d 1327, 1334–35 (11th Cir. 2006). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  This Circuit has held that experienced narcotics agents may testify about the methods of operation in the drug distribution business, including interpreting drug codes and jargon.  Garcia, 447 F.3d at 1334–35.  However, because expert evidence is powerful and potentially misleading, expert opinion that otherwise meets the requirements of admissibility under Rule 703 may be excluded under the balancing test in Rule 403.  United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004).

On the facts of this case, we conclude that the district court did not abuse its discretion by permitting Cipriano to testify as an expert witness.  Neither did the district court abuse its discretion in finding that the probative value of his testimony was not substantially outweighed any danger of unfair prejudice.  Cipriano was an experienced narcotics agent and his testimony allowed the jury to understand the terms used in Paul's wiretapped conversations and text messages as is permissible under this Circuit's case law.  Garcia, 447 F.3d at 1334–35.  Paul has not identified any danger of unfair prejudice that outweighs the relevant and highly probative nature of this evidence.  Frazier, 387 F.3d at 1263.

Therefore, upon consideration of the parties' appellate briefs and the record on appeal, we affirm.

**AFFIRMED.**