[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11049

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRENTON LAWRENCE FRANK,

Defendant- Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:11-cr-00019-SPC-MRM-1

_____

2                     Opinion of the Court                    21-12139

_____

No. 21-12139

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRENTON LAWRENCE FRANK,

Defendant- Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cr-00170-SPC-NPM-1

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Brenton Frank challenges various rulings that the district court made in separate proceedings related to the revocation of his prior term of supervised release under

18 U.S.C. § 3583(e)(3), and his subsequent conviction for possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2). After careful consideration, we affirm.

## I.

In 2011, Frank was convicted of distributing material involving the sexual exploitation of minors. The district court sentenced him to 72 months' imprisonment, followed by 15 years of supervised release.

In late 2019, after Frank had begun his supervised release, Lee County Deputy Sheriff Michael Vivian pulled him over because his brake lights were malfunctioning. Upon checking Frank's records, Vivian learned that he was a registered sex offender. Vivian was accompanied by a trainee, and a few more officers shortly arrived on the scene and parked behind Vivian's patrol car. Vivian turned off his roof lights, and roughly six minutes after pulling Frank over, he returned his identification along with a written warning. He also immediately asked to search Frank's car, and Frank gave verbal consent.

Upon searching the car, Vivian found a phone under the driver's seat. Frank admitted that the phone was his and signed a form consenting for the officers to search it. Vivian found child pornography on the phone, so he seized it and allowed Frank to leave. After obtaining a search warrant for the phone, the Sheriff's Office found hundreds of files depicting sexual abuse of children.

The same day as the traffic stop, Frank called his probation officer, Robert Gillespie, and left a voicemail saying that he had been stopped by law enforcement and admitting that he had been using a smartphone to access the internet. Gillespie then received a call from Vivian, who told him about the encounter, including the child pornography that he found on the phone. In a later phone conversation with Gillespie, Frank further admitted to downloading and viewing child pornography with the phone. Gillespie kept handwritten notes of these conversations, which he later destroyed after summarizing them on his computer.

Frank obtained another phone, which he used to communicate with a twelve-year-old girl in Texas. Through a series of manipulative messages, he convinced her to connect with him in person. So he traveled to Texas and met with her, but he was discovered by her mother.

The next day, law enforcement officers pulled Frank over in New Mexico. After realizing that Frank was on supervised release, the officers asked him if he had permission to leave the judicial district where he was convicted. Frank then sped away, and at the end of a high-speed chase, the officers arrested him.

Officer Gillespie later obtained a warrant against Frank from the district court for nine violations of his supervised release conditions: (1) failing to answer truthfully in response to inquiries from his probation officer; (2) failing to participate in mental health counseling; (3) using a computer or online service; (4) viewing images of child pornography; (5) committing a crime while on

supervised release by possessing child pornography; (6) traveling outside the judicial district to Texas without permission; (7) having direct contact with a minor in Texas; (8) traveling outside the judicial district to New Mexico without permission; and (9) committing a crime while on supervised release by fleeing and eluding officers in New Mexico.

In preparation for his supervised release revocation hearing, Frank sought a subpoena of Officer Gillespie's notes from his conversations with Frank and Deputy Vivian. The district court granted the subpoena, but it later quashed it at the request of the government.

After hearing testimony and arguments at the final revocation hearing, the district court found Frank guilty of all nine supervised release violations. Frank asked the court to delay his sentencing so that he could obtain a mental health evaluation but admitted that he was competent to proceed. The court denied this request, revoked his supervised release, and sentenced him to 24 months' imprisonment—the maximum statutory penalty.

Meanwhile, Frank was indicted in a new criminal proceeding for possession of child pornography. Frank moved to suppress the evidence obtained through Deputy Vivian's search of his car and phone. But after an evidentiary hearing, the district court denied the motion. Following a bench trial, the district court found Frank guilty. It calculated the guideline sentencing range to be 120 to 135 months. It nevertheless imposed a 180-month sentence, set

to run consecutively to his sentence for his supervised release violations, and followed by a lifetime of supervised release.

Frank timely appealed the district court's judgments in both his revocation proceeding and his new criminal case. This Court later consolidated the two appeals.

## II.

Frank challenges several of the district court's decisions from both the revocation proceeding and the new criminal case. First, he argues that the district court erred at the revocation proceeding by quashing the subpoena for Officer Gillespie's notes. Second, he argues that the district court abused its discretion by denying his request for a continuance of sentencing on his supervised release violations so that he could seek a mental health evaluation. Third, he argues that, in the new criminal case, the district court erred by denying his motion to suppress the evidence that Deputy Vivian obtained after searching his car. Fourth, he asserts that the court abused its discretion by imposing substantively unreasonable sentences—both for his supervised release violations and for his new criminal offenses.

### A.

First, Frank argues that the district court should not have quashed the subpoena for Officer Gillespie's notes. He argues that he was entitled to those notes under Federal Rules of Criminal Procedure 16, 17 and 32.1. And he asserts that the notes were necessary

because they may have contradicted the testimony of Officer Gillespie or Deputy Vivian.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007). Furthermore, we will not reverse an erroneous evidentiary ruling if it was "harmless," meaning that it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the" conviction. *See United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999).

Even assuming, without concluding, that the district court erred by quashing the subpoena, we find that this action was harmless. Regardless of whether the notes could have contradicted Deputy Vivian's testimony that Frank's brake lights were malfunctioning, or that he consented to the search of his car, the evidence of child pornography discovered during the search would have nevertheless been admissible because the exclusionary rule does not apply in supervised release revocation proceedings. *United States v. Hill*, 946 F.3d 1239, 1242 (11th Cir. 2020).

And even if Officer Gillespie's notes had somehow contradicted his or Deputy Vivian's testimony regarding the contents of the phone, an FBI agent independently testified that he had reviewed the images of child pornography, along with some pictures that Frank had taken of himself with the phone. Because the evidence of guilt as to the relevant violations far outweighed any prejudice that Frank suffered due to his inability to obtain the notes, the district court's decision to quash the subpoena did not

substantially influence the outcome of the revocation proceeding. *See Hands*, 184 F.3d at 1329. We therefore affirm as to this issue.

### B.

Second, Frank challenges the district court's denial of his request for a continuance of his sentencing on the supervised release violations so that he could seek a mental health evaluation. But he only vaguely asserts that this denial was an abuse of discretion, and that it was not supported by the evidence. Given the perfunctory nature of Frank's argument, we conclude that he has abandoned the issue. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

### C.

Third, turning to the new criminal proceeding, Frank argues that the district court erred by denying his motion to suppress the evidence found through Deputy Vivian's search of his car and phone. He argues that Vivian illegally prolonged the traffic stop to search his vehicle without articulable suspicion of further illegal activity. He alternatively contends that, even if Vivian did not prolong the stop, he never obtained Frank's consent for the search. Finally, he asserts that, even if he consented to the search, it was the result of involuntary acquiescence.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's factual findings for clear error and its application of the law to the facts *de novo. Id.* We also review the court's credibility determinations for clear error. *United States v. Amedeo*, 370 F.3d 1305, 1318 (11th Cir. 2004). "[A]ll facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi,* 226 F.3d 1256, 1262 (11th Cir. 2000).

A seizure stemming from a police-observed traffic offense violates the Fourth Amendment if the traffic stop is prolonged beyond the time reasonably necessary to complete the "mission" of the stop—such as checking the driver's license and registration, searching for outstanding warrants, and attending to safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 350–51, 354–55 (2015).

That said, further questioning does not implicate the Fourth Amendment if the initial detention turns into a consensual encounter. *United States v. Ramirez*, 476 F.3d 1231, 1237 (11th Cir. 2007). To determine whether an encounter has become consensual, we ask whether, based on the totality of the circumstances, "a reasonable person would feel free to terminate" it. *Id. at* 1240 (quoting *United States v. Drayton*, 536 U.S. 194, 201 (2002)). Relevant factors might include the length of the stop; whether the police behaved coercively; the number of officers present; the defendant's age, education, and intelligence; whether the defendant was physically

restrained or touched; whether his path was blocked; and whether he had everything he needed to proceed on his journey. *Id.*; *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021).

Similarly, "[s]earches conducted by means of consent are valid so long as the consent is voluntary." *United States v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985). The government has the burden to prove the voluntariness of consent, meaning that it must show that the consent was "the product of an essentially free and unconstrained choice." *Zapata*, 180 F.3d at 1241 (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)).

Here, the district court did not err in finding that Vivian did not prolong the stop to search Frank's car. Vivian testified that he issued the warning roughly six minutes after pulling Frank over, and that he asked to search the car shortly afterward. This amount of time was reasonably necessary to complete the "mission" of issuing Frank a warning for an equipment violation. *See Rodriguez*, 575 U.S. at 350–51. And we agree that, once Vivian issued the warning and returned Frank's identification, a reasonable person would have felt free to leave. After all, the patrol cars were parked behind Frank instead of blocking his path, and Vivian seemingly indicated that he had deactivated the roof lights on his vehicle. Although there were multiple officers standing nearby, none of them had drawn their weapons or attempted to restrain Frank. In light of these facts, the encounter became consensual after Vivian returned the paperwork to Frank.

And the district court did not clearly err by finding that Frank consented to the searches of his vehicle and his phone. Vivian testified that Frank gave him verbal consent to search the vehicle. And although this consent was not recorded electronically or in writing, we cannot say that the district court clearly erred by crediting Vivian's testimony. Likewise, because Frank signed the form authorizing the search of his phone, the record supports the district court's finding that he consented to that search as well.

Finally, Frank failed to argue before the district court that, even if he gave consent, it was involuntary. We therefore review that argument for plain error. *United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005). "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* at 1019.

Frank contends that he involuntarily acquiesced to the search because there were multiple officers present, some of their vehicle lights were on, and he had some mental health issues. But it is not plain to us that such circumstances render consent involuntary. We accordingly affirm the denial of his motion to suppress evidence.

## D.

Fourth, Frank argues that the district court abused its discretion by imposing substantively unreasonable sentences—both in the revocation proceeding and in his new criminal case.

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the [18 U.S.C.] § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). A sentence is substantively unreasonable only if the district court "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010)). Accordingly, we do not reweigh the Section 3553(a) factors unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment." *Irey*, 612 F.3d at 1190; *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009).

Although the district court must consider each Section 3553(a) factor, it need not discuss each factor specifically, and its statement that it considered the factors is sufficient. *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). Nor must it weigh each factor equally, but instead may give "'great weight' to one factor over others." *Rosales-Bruno*, 789 F.3d at 1254 (quoting *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009)). When a district court departs from the sentencing guidelines range, as it did here, "the justification for the variance must be 'sufficiently

compelling to support the degree of the variance.'" *Irey*, 612 F.3d at 1186–87 (quoting *Gall*, 552 U.S. at 597).

Regarding the 24-month sentence for his supervised release violations, Frank contends that the district court should not have imposed the statutory maximum, and that his mental and emotional problems justified a lower sentence.

But there is nothing in the record to suggest that the district court's sentence was substantively unreasonable. Although a sentence of 24 months was above the guidelines range, the district court provided adequate justification for the variance by explaining Frank's deliberate efforts to circumvent various conditions of his supervised release and manipulate a minor into meeting with him. The district court noted Frank's mental health history, and we are unconvinced that it abused its discretion merely by failing to give more weight to this factor. *See Rosales-Bruno*, 789 F.3d at 1254; *Langston*, 590 F.3d at 1237. Because Frank cannot show that the district court abused its discretion in imposing the statutory maximum sentence of 24 months, we affirm on this issue.

As for the 180-month sentence in his new criminal case, Frank again argues that the district court committed a clear error of judgment in weighing the Section 3553(a) factors. He specifically asserts that it gave too much weight to his criminal history, and that it should have given more weight to his mental health problems. He also argues that he is distinguishable from other defendants whose criminal histories justified upward variances. And he asserts that all the justifications that the district court stated for the

upward variance were already baked into the sentencing guidelines calculation. Finally, he contends that the upward variance went against the purpose of the Sentencing Guidelines to provide certainty and fairness.

We conclude that Frank's 180-month sentence was substantively reasonable. Contrary to Frank's contention, there is nothing in the record to suggest that the court committed a clear error of judgment in weighing the Section 3553(a) sentencing factors. The court made sufficient findings to support its upward variance when it stated, among other things, that it was essential for Frank to understand the seriousness of his offense, promote respect for the law, provide just punishment, deter Frank from future criminal conduct, and protect the public from further crimes. These findings were especially supported by Frank's escalating and manipulative behavior in contacting a minor directly. The court had the discretion to assign more weight to Frank's criminal history than to his mental health issues or the criminal histories of other defendants. *See Rosales-Bruno*, 789 F.3d at 1254. And although the court varied upward based on conduct that was already considered in calculating the guideline range, we have previously held that courts may do just that. *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021). Accordingly, we cannot conclude that the district court abused its discretion by imposing a 180-month sentence.

**AFFIRMED.**