[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10879

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

PATRICK DEVONE STALLWORTH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cr-00206-LSC-SGC-1

_____

Before WILSON, LUCK, and BLACK, Circuit Judges.

PER CURIAM:

Patrick Devone Stallworth appeals his conviction for kidnapping and conspiracy to commit kidnapping, resulting in the death of the victim, in violation of 18 U.S.C. § 1201(a)(1) and (c). He asserts the district court erred by denying him funds to hire a DNA expert, who he contends was necessary to his defense. Stallworth also contends the district court failed to conduct a *Daubert*[1] hearing to determine whether a DNA expert was necessary to his defense or to challenge the reliability of the Government's DNA expert. Finally, Stallworth argues the district court erred by admitting hearsay evidence under the excited utterance exception. After review,[2] we affirm the district court.

### I.  DNA EXPERT

*A.  Funds for DNA Expert*

"Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application." 18 U.S.C.

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] We review a district court's denial of funds for an abuse of discretion. *United States v. Brown*, 441 F.3d 1330, 1363 (11th Cir. 2006). A district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007).

23-10879                Opinion of the Court                3

§ 3006A(e)(1).  In certain contexts, due process may also require appointment of expert services.  *See Moore v. Kemp*, 809 F.2d 702, 711-12 (11th Cir. 1987) (*en banc*).  Still, a defendant "must demonstrate something more than a mere possibility of assistance from a requested expert."  *Id.* at 712.  He must show there is a reasonable probability the expert would assist his defense, and denying expert assistance would result in a fundamentally unfair trial.  *Id.*  "[D]efense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case."  *Id.*

The district court did not abuse its discretion by denying Stallworth the funds to hire a DNA expert.  Stallworth's general assertions about the complexity of DNA science, and the need to rebut the testimony of the Government's expert, fall short of his obligation to inform the court about how a DNA expert would help prove his innocence.  *See Moore*, 809 F.2d at 712.  Stallworth's failure is underscored by the significance of the Government expert's testimony, which showed the victim's DNA was found in Stallworth's apartment.  Stallworth's admission to police, and in open court, that he saw the victim in his apartment rendered moot any challenge to the Government's DNA evidence.  *See id.*  Thus, an unfair trial did not result because the district court denied Stallworth funds to hire a DNA expert to address evidence that he did not contest.  *See id.*

B.  Daubert *hearing*

Stallworth did not request a *Daubert* hearing to establish the reliability of his own expert or challenge the reliability of the Government's DNA expert.  At trial, Stallworth did not object when the Government, after qualifying her as an expert, moved the court to recognize the Federal Bureau of Investigation forensic examiner as an expert in DNA analysis.

We review the district court's failure to hold a *Daubert* hearing, when faced with no objection, for plain error.  *United States v. Frazier*, 387 F.3d 1244, 1268 n.21 (11th Cir. 2004).  A witness who is qualified as an expert may offer opinion or other testimony under the following conditions:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court did not plainly err by failing to conduct a *Daubert* hearing on either the reliability of Stallworth's own expert or the reliability of the Government's DNA expert.  Stallworth did not request a *Daubert* hearing in connection with the request for

funds for his expert, and we find no plain error in the district court's failure to hold one. As to the Government's expert, there was no basis to exclude her testimony because she was unqualified or because her opinions were unreliable, so the failure to hold a *Daubert* hearing was not plain error. *See Frazier*, 387 F.3d at 1268 n.21. Accordingly, we affirm as to this issue.

## II.  EXCITED UTTERANCE

Hearsay is an out-of-court statement offered as evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Hearsay evidence is generally inadmissible unless it falls under one of the stated exceptions to the hearsay rule. *See* Fed. R. Evid. 802. Statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," are admissible as an exception to hearsay. Fed. R. Evid. 803(2). Courts ruling on this hearsay exception should consider the totality of the circumstances to determine whether the declarant was still under the stress or excitement of the startling event when the statement was made. *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010).

The district court did not abuse its discretion by admitting Ava's statement under the excited utterance exception. Although the Government did not attempt to show how much time had lapsed between Cupcake's abduction and when Ava made her statement, Shenita Long testified her daughter looked "startled," "nervous," "lost," and could barely talk when she asked Ava where Cupcake was. *See* Fed. R. Evid. 803(2); *see also Belfast*, 611 F.3d at

817. Long's testimony also showed the excitement Ava exhibited while jumping in the bouncy house prior to the abduction was different from the panic Ava exhibited when questioned about Cupcake's whereabouts. *See id.* Finally, Stallworth provided no evidence showing that Ava, who was only 3 at the time, had the motive, opportunity, or time to fabricate her story, or that anyone influenced her statement to her mother. Thus, when looking at the totality of the circumstances, the evidence suggests that Ava's statement to her mother was spontaneous, and she made it while still under the stress of witnessing her "very close" friend's abduction. *See id.*

**AFFIRMED.**